LOTTINGER, Judge.
The defendants in this suit, Anderson Brothers and Employers’ Mutual Liability Insurance Company of Wisconsin, are appealing from a judgment rendered against them in favor of plaintiffs, Leonard Coulon and his wife, Ada Kimball Coulon, awarding to the latter workmen’s compensation at the rate of $30 per week for 300 weeks for the death of plaintiffs’ eighteen year old son, David Coulon, who was killed while in the employ of defendant, Anderson Brothers. The defendants tendered into the registry of the court the sum of $300 for funeral expenses of the decedent in the amount of $250 and incidental expenses in the amount of $50. In the judgment appealed from this amount also was ordered paid to the plaintiffs.
It is admitted in the record that 65% of the decedent’s weekly wages at the time of his death exceeded the sum of $30 per week. It is also admitted that the employment was hazardous and that the decedent met his death during the course and scope thereof. The sole question for determination, it is agreed, is the dependency and, if so, to what extent, of the plaintiffs on the decedent.
The trial judge has favored us with a written opinion from which we herewith quote in part:
“The said minor, David Coulon, was single and always lived with his parents, Leonard Coulon and Ada Kimble Coulon, at the family home which, for many years preceding his death, has been on a 30 acre tract of land (mostly woodland with only about 5 acres open) situated between Krotz Springs and Melville, Louisiana. At the time of David’s accidental death and for many years prior thereto the Coulon Family consisted of the said father and mother, a sister, age 17 years, and the said minor David Coulon.
“David obviously was a home-loving and hard-working boy since childhood. His father testified that his only son David was his ‘right hand’. The deceased minor, since he was a small boy, assisted his family by working with his father on the farm. And for several years prior to his accidental death he and his father worked together in hauling by truck for others principally cotton seed to Alexandria, Louisiana for a few months beginning about September of each year. The said father and son also did other hauling work including the hauling of fence posts. In this hauling work David drove the truck and with his father loaded and unloaded the said motor vehicle (a 1948 truck with mileage of about 92,000 miles). In addition, and whenever work on the outside was available in the vicinity, David obtained such jobs and worked for different firms such as Spencer’s Potashnick and Anderson Brothers Corporation. In fact, as stated above, he was working for Anderson Brothers Corporation when he was accidentally killed on the job. And always, even when he worked on the outside, David lived at home with the family and was there with them every night. It is also noted that David never drank intoxicating liquor and obviously was a lad with good habits and was industrious.
“For working on the farm David Coulon received no pay from his father and his father collected and used for the family the said minor’s pay or wages earned in the hauling business. And all the wages earned on the outside by David was contributed to and spent entirely for the Coulon Family and was used to buy family groceries regularly, to buy furniture and other things for the Coulon home, to pay on the truck, to purchase clothes regularly by the daughter Adele, and to meet the needs of the deceased. In other words, David Coulon never kept any of his earnings for himself *119 —he spent his entire earnings for the family in giving financial assistance to his parents and helping them to support, maintain and provide for the needs of themselves and their two minor children.
“As the mother testified, ‘Well, David and his daddy both worked together at the same time and supported the family.’ Mrs. Coulon also testified that David was single and 18 years of age at the time of his death, that he never paid hoard, that he bought groceries for the family regularly, that he gave his sister Adele money regularly to buy clothes for herself, that ‘he worked with his daddy and when he was not working with his daddy he was working out’, that at the time of his death he was working for Anderson Brothers. Mrs. Coulon is obviously an uneducated woman as indicated by her testimony and the fact that she did not understand the meaning of the words ‘standard of living’.
“Mr. Leonard Coulon testified that wages and money earned by David in the trucking business were paid to him, the father of said deceased, most of the time, and that David used the entire earnings received by him to buy groceries for the household, to buy what ‘he needed’, and to give his sister money to make purchases for herself. Mr. Coulon testified that David would use his earnings to ‘spend for the family you know’. — ‘That’s what I would say for he didn’t keep any money.’ — ‘He spent it right along with the family.’ In other words, according to Mr. Coulon, 100% of David’s earnings was contributed and used toward the support of Mr. and Mrs. Leonard Cou-lon and in helping them meet their obligations to support their minor children living with them in the family home.
“Mr. Herbert F. Darnell testified that he had employed Mr. Coulon and his truck to haul posts and had hired David Coulon to help him. He further stated that he gave David’s pay or earnings for this work and his services to his father, Leonard Coulon. And when asked the question ‘Was there any particular reason why you paid the father?’, Mr. Darnell replied, ‘Well, the boy and the father all went into the same pot so it didn’t make any difference to me, or words to that effect anyway.’
“As to the net earnings in the trucking business during the year preceding David’s accidental death, Mr. Leonard Coulon testified that the net earnings of him and David after truck expenses were deducted amounted to ‘definitely about fifteen, sixteen hundred some year.’ Mr. Coulon then estimated the total earnings of David during the year prior to his death at eight or nine hundred dollars. The father further stated in this connection ‘I’d say he was my right hand and what I made and he made zvas about the same, because he was a pretty good size man when he got killed.’ And when asked the question, ‘In other words, he and you did identical work?’, Mr. Cou-lon replied, ‘That’s the story.’ — ‘That’s right.’ Mr. Coulon also said that he had a job with the levee board paying $300 per annum in the performance of which he had to bear transportation and other expenses. The defendants did not offer any evidence to refute the above and merely questioned him about a letter from attorney Dejean stating that the ‘Total amount’ (not net amount) earned for hauling averaged about $2000 per annum. And it is also recalled that David and his father worked together in this hauling business and his father collected all money earned by David and himself in this work.
“The undisputed testimony shows that David Coulon contributed all of his earnings to the family and his parents and that all 'of his said earnings were used for the needs of the family and to assist the parents in meeting their legal obligations to support and provide for the needs of their minor children living with them in the family household. The father likewise used all of his earnings for the family and never had over $100 in the bank as a saving. And David never kept for himself any of his earnings — the family received and used all. Obviously, David’s parents were dependent on him and all of his earnings at the time of his accidental death and for many years prior thereto.
*120 “After David’s death the merchants from whom the Coulons bought groceries, stated that their business with this family after David’s death decreased to the extent of the substantial purchases David regularly made with them during his lifetime. And Mr. Coulon, in answer to the question ‘And you have been supporting the family since the time of David’s death?’, replied, ‘To the best I could. But I am sure if I had to go all over again and build a home and buy a little stuff, I know I couldn’t do. it.’
“Defendants offered no evidence to rebut or refute the testimony presented by the plaintiffs and at the beginning of the trial of this case, counsel for defendants stipulated for the record the following, as shown on page 1 of the transcript: ‘The sole issue to be defended in this suit as far as the defendants are concerned is the question as to whether or not the plaintiffs and members of the plaintiff’s family were dependents to the deceased as of the date of his death.’ ”
******
“From the undisputed testimony, it appears that at the time of his accidental death and for many years prior thereto the minor David Coulon lived with his parents at their home and with the Coulon household composed of the said father and mother, the minor daughter of plaintiffs and sister of the deceased, Adele, and the said deceased minor David Coulon; that the said father and mother wereiegally and actually dependent on their said deceased son and on all of his earnings for their support;1 and that all of the earnings of the said David Coulon were contributed and spent, for the support of his parents and the said members of the family household at the time of his death and for many years prior thereto. And whether said parents are designated as total or partial dependents herein is immaterial due to the fact that the total contributions made to said dependents in the year prior to decedent’s death equals to the total earnings of decedent in the year prior to his death, and in the application of the formula provided by law the result and benefits would be the same as in the case of persons wholly dependent. This is due to the fact that the weekly compensation to be paid, under said formula, shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the total amount contributed by the employee to such partial dependents in the year prior to his death bears to the total earnings in the year prior to his death. And in applying the said formula to this case we find the following equation:—
X: to 30 as $800 (total contributions in year prior to death) :
$800 (Total earnings in the year prior to his death)
or X :30 as 1:1
X=30.
In other words, the deceased, David Coulon contributed 100% of his earnings to the support of his dependent parents in the year prior to his death, and the said dependents-should receive 100% of the maximum compensation.”
We have carefully examined the record' and find that the testimony therein contained substantially substantiates the findings of fact made by the trial judge. Certainly there is no manifest error therein. In the course of his opinion the trial judge cited and relied on, among other authorities, the case of Duos v. Gravier & Harper, La.App., 185 So. 665, 668 (Writ of Error denied by Supreme Court March 6, 1939), the opinion in which was handed down by the late Judge Dore of this court. We have examined our holding therein and find that it is controlling here.
In the case of Duos v. Gravier & Harper, supra, this court held that,
“Where the dependents receive only a part of the earnings of the deceased employee weekly, they are partial dependents only, but when they receive 100% of his earnings weekly, and these earnings go to support the whole family out of the common fund established with them, then the dependents are regarded as no longer partial but wholly *121 dependents and as such are entitled to the same compensation as that class of dependents, which, of course, is 65% of the weekly wage, at the time of the accident causing the death of the employee, for three hundred weeks, and that regardless of the length of time during which they received the 100% of his earnings.”
Following that case and the authorities therein cited and since the decedent contributed 100% of his earnings for support at the time of the accident and death and as a matter of fact for the year prior to his death, the dependents should receive 100% of the maximum compensation.
While counsel for appellants have succeeded in pointing out some minor discrepancies in the findings of the trial judge, no material or manifest errors have been shown. Furthermore, they have cited no Louisiana authorities which overrule or •even question the holding of the Duos case, •supra, and we have, therefore, no alternative but to follow it and uphold the findings of the lower court.
For the reasons assigned the judgment •appealed from is affirmed.
Judgment affirmed.